MÜLLER v. CHICAGO, I. & L. R. CO. et al.

(Circuit Court, E. D. New York. December 31, 1906.)

1. REMOVAL OF CAUSES—AMENDMENT OF PETITION.

Where a cause has been removed on the ground of diversity of citizenship on a motion to remand on the ground that plaintiff sues as assignee of a chose in action, and that the petition for removal does not show the citizenship of the assignors, the court has power to permit its amendment

to show, according to the fact, that their citizenship was such as to give jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 178.]

**2. COURTS—JURISDICTION OF FEDERAL COURTS—SUIT BY ASSIGNEE.**

In an action against two railroad companies, the complaint alleged the delivery of goods to one which it accepted as a common carrier, and agreed and undertook to carry and safely deliver to the second; that it failed to take proper care of such goods, whereby they became damaged and injured in transit; that it delivered the same to the second company, which accepted them as a common carrier, and agreed and undertook to carry them and safely deliver them to a third company, but, in violation of its agreement and duty, diverted and unreasonably delayed the shipment; and that the goods were finally sold by both defendants without notice to plaintiff. *Held,* that the action was one for breach of duty as a carrier, arising by operation of law or by express contract, and in either case was in tort, and not to recover on a chose in action within the meaning of section 1 of the federal judiciary act of March 3, 1875 (18 Stat. 470, c. 137 [U. S. Comp. St. 1901, p. 508]), and might, therefore, be brought in a federal court by an assignee without reference to the citizenship of his assignor.

At Law.

Latson & Bonynge (Paul Bonynge, of counsel), for plaintiff.

Davies, Stone & Auerbach (Julien T. Davies, Jr., and Charles H. Tuttle, of counsel), for defendant Chicago Great Western Railway.

THOMAS, District Judge. It appears that this action was commenced against the defendants on or about November 24, 1905, by the service of a summons and complaint, and that the venue was laid in the Supreme Court of the state of New York for the county of Kings. On or about December 13, 1905, the defendants joined in a petition to the Supreme Court of the state of New York for the removal of the case into the Circuit Court of the United States for the Eastern District of New York, on the ground that the controversy was one wholly between citizens of different states, and for this purpose duly filed in said court a bond for removal. Thereafter there were several stipulations between the parties extending the defendants' time to plead or move in the action, and on February 26, 1906, each defendant answered. On or about August 28, 1906, the attorney for the plaintiff served upon the defendants' attorneys a notice of trial of the action for a term of this court beginning November 7, 1906, and on August 29, 1906, a cross-notice of trial was served by the defendants. Thereafter, at the instance of the defendants, evidence was taken by deposition, and the attorneys for the plaintiff appeared and examined the witnesses produced. On November 19, 1906, the depositions of 17 other witnesses were taken in this action in Louisville, Ky., by stipulation and agreement between the attorneys for all the parties, and thereupon the attorneys for the plaintiff appeared and participated in the examination of such witnesses. It further appears that on or about December 8, 1906, the attorneys for the plaintiff moved this court to remand the action, on the ground that this court had no jurisdiction of the action, or of the parties thereto.

It appears upon the hearing that the ground of such motion is that

the plaintiff is an assignee of the cause of action, and that the record does not show that the assignors could have removed the action. The assignors of the plaintiff at the time the action was commenced were citizens and residents of the commonwealth of Massachusetts, and the plaintiff was a resident of the state of New York, while the Chicago, Indianapolis & Louisville Railroad Company was formed and existed under and by virtue of the laws of the state of Indiana, of which state it was a resident, and the Chicago Great Western Railway Company was created under the laws of the state of Illinois, of which state it was a resident. The petition for removal states "that there is a controversy in this suit which is wholly between citizens of different states, which can be fully determined between them"; and the residence of the parties is stated as above.

At the time of the hearing of the motion to remand, a motion was also heard for an order amending the petition for removal by inserting the following allegation:

"That at the time of the commencement of the said suit Jeremiah Williams, Joseph S. Williams, Edward P. May, Charles M. Boyd, and Gardiner B. Williams, being the individuals referred to in paragraph 'Third' of the complaint herein, were and still are citizens and residents of the commonwealth of Massachusetts, and none of them was a citizen or resident of the state of Indiana, the state of Illinois, or the state of New York."

And changing the venue of said petition to read as follows: "Supreme Court of the state of New York, county of Kings."

The plaintiff objects to such amendment of the petition upon the ground that, if the same were necessary to give this court jurisdiction, the action is still pending in the court of the state, that this court has no power to allow the amendment, and that, if it were made, it would be ineffective for any purpose. There is one purpose for which in good conscience as well as in law it should be effective, and that is to estop forever the defendants from asserting hereafter that this court has not power to allow the amendment. It may be that the plaintiff would not be estopped, as he would not be if the court is without power to allow the amendment, but it is inconceivable that any tribunal would permit a party to place upon the record evidence that the court had jurisdiction for the purpose of assuring jurisdiction, and thereafter dispute such jurisdiction, or that the evidence offered for the purpose of proving it had no such effect.

It is not disputed that there was such diversity of citizenship between the plaintiff's assignors and the defendants as would give the Circuit Court of the United States jurisdiction, and the only defect, if any, was in the failure to make proof of the fact at the time the petition for removal was filed. Inasmuch as it is considered that the court has upon other grounds jurisdiction of the action, it is concluded that the defendants may amend the petition, so that, at least, they cannot be heard hereafter to dispute the jurisdiction of the court. The plaintiff upon the motion to remand relies upon section 1 of the removal act (Act March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508]), which provides:

"Nor shall any circuit or district court have cognizance of any suit * * * to recover the contents of any promissory note or other chose in action in favor

of any assignee * * * unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

The complaint shows that in the month of May, 1903, the plaintiff's assignors delivered to the defendant Chicago Great Western Railway Company, at Kansas City, Mo., certain property belonging to the plaintiff, and that the defendant "then and there accepted the same as common carrier, and undertook and agreed as such common carrier, in consideration of a reasonable compensation to be paid to it therefor, safely to carry the said goods to Chicago in the state of Illinois, and there deliver the same to the defendant Chicago, Indianapolis & Louisville Railroad Company for transportation and delivery to said Jeremiah Williams & Co., at Boston, in the state of Massachusetts"; that such defendant "did not safely carry said goods to Chicago and there deliver the same in accordance with its said undertaking, but, on the contrary, and in violation thereof, and of its duties and agreement in the premises, permitted said goods to become wet and dirty, in which condition said goods were liable to and prone to deteriorate, and become heated and otherwise injured and impaired"; that on or about June 29, 1903, such defendant, "without taking any care or precaution for the drying, preservation, or protection of said goods, and without any notice whatsoever to the said Jeremiah Williams & Co. of the then condition of said goods, delivered the same to the defendant Chicago, Indianapolis & Louisville Railroad Company, at Chicago, in the state of Illinois"; that such last-named defendant "then and there accepted said goods, and undertook and agreed as common carrier as aforesaid, in consideration of a reasonable compensation to be paid to it therefor, safely to carry the said goods to Louisville, in the state of Kentucky, and there deliver the same to a connecting carrier for transportation and delivery to said Jeremiah Williams & Co., at Boston, in the state of Massachusetts"; "that by reason of the premises, and of its failure to take due and adequate precautions for the care, protection, and preservation of said goods, and of its delivery of said goods in the hereinbefore described condition to the defendant Chicago, Indianapolis & Louisville Railroad Company, without any notice thereof to the said Jeremiah Williams & Co., the defendant Chicago Great Western Railway became and was bound to the said Jeremiah Williams & Co. as an insurer of said goods and of the safe carriage thereof from Chicago, in the state of Illinois, to Boston, in the state of Massachusetts, and of the safe delivery of the said goods to said Jeremiah Williams & Co. at said last-named place, and more particularly became and was bound jointly and severally with the defendant Chicago, Indianapolis & Louisville Railroad Company to answer to said Jeremiah Williams & Co. for all defaults of said defendant Chicago, Indianapolis, & Louisville Railroad Company in the premises, and to pay to said Jeremiah Williams & Co., and to save said Jeremiah Williams & Co. harmless from any and all loss of or injury or damage to said goods while in the possession, custody, or upon the lines of said defendant Chicago, Indianapolis & Louisville Railroad Company"; "that the defendant Chicago, Indianapolis & Louisville Railroad Company did not safely

carry said goods to Louisville, in the state of Kentucky, and there deliver the same to the connecting carrier, pursuant to its said undertaking, but, on the contrary, and in violation thereof, and of its duties and agreement in the premises, diverted the said goods and carried the same to New Albany in the state of Indiana, and unreasonably delayed the carriage and transportation thereof by permitting said goods to remain at said p'ace for a period of upwards of two weeks, and in further violation of its aforesaid duties and agreement wholly failed and omitted to take any precautions or measures for the care, preservation, and protection of said goods, and wholly failed to give to said Jeremiah Williams & Co. any notice of the delay in the transportation of said goods and of the then condition thereof"; that thereafter, "and on or about the 15th day of July, 1903, the defendant Chicago, Indianapolis & Louisville Railroad Company, acting jointly and in conjunction with the defendant Chicago Great Western Railway, sold said goods without the knowledge or consent of the said Jeremiah Williams & Co., and without any notice thereof to said Jeremiah Williams & Co., all in violation of the duties and obligations of said defendants and each of them in the premises." It was the legal duty of the Chicago Great Western Railway Company as a common carrier to accept the goods for carriage, and thereupon there attached to it the liability imposed by law upon a common carrier. The complaint does not show that there was any contractual modification of this liability, nor is there any allegation of any express or specific contract between the shipper and the carrier. The complaint states that the defendant "then and there accepted the same as common carrier, and undertook and agreed as such common carrier * * * to carry to Chicago, * * * and there deliver to the Chicago, Indianapolis & Louisvil'e Railway Company."

The gravamen of the action is the breach of duty imposed by law upon the carrier to carry safely; and the nature of the action is not necessarily changed by the a'legation that the defendants agreed to perform the duty that the law imposed upon them. Such an agreement is implied, but is not the foundation of the carrier's duty nor the source of his liability, unless it is evident that the pleader intended to base his right to recover solely upon an express stipulation between the shipper and the carrier. Now, it appears from the complaint that the Chicago Great Western Railway Company "permitted said goods to become wet and dirty," so that they were "prone to deteriorate and become heated and otherwise injured." This is an allegation that is pertinent to an action on the case, and to recover therefor resort is not had to the "contents" of any agreement.

The actual charge against the first carrier is that it allowed the goods to come into the condition named, and, without any effort to diminish the injurious effect thereof, delivered the goods to the second carrier. It is true that the complaint does charge that the second carrier accepted the goods and "undertook and agreed as common carrier as aforesaid * * * safely to carry" the same to Louisville, and there de'iver, to a second connecting carrier. And the charge against the second carrier is that it "diverted the said goods and carried the same to New Albany in the state of Indiana," and "unreasonably delayed

the carriage and transportation thereof by permitting said goods to remain at said place for a period of upwards of two weeks, and, in further violation of its aforesaid duties and agreement, wholly failed and omitted to take any precautions or measures for the care, preservation, and protection of said goods, and wholly failed to give to said Jeremiah Williams & Co. any notice of the delay in the transportation of said goods and of the then condition thereof." Then follows the final act of wrong on the part of both companies in the sale of the said goods.

The complainant charges that the second carrier undertook to carry as a common carrier. If it undertook to carry the goods, as the fact appears to be, it was bound to the duties resting upon a common carrier. If it diverted the goods, it is liable as a common carrier. If it omitted to take proper care for the preservation and protection of the goods that it had to carry, it is liable as a common carrier. If it alone, or in conjunction with the first carrier, sold the goods without jurisdiction, it was guilty of conversion.

The cause of action against the second carrier for delay, if it exists at all, is based upon negligence, although the delay might in a given case be such as to amount to conversion. Scovill v. Griffith, 12 N. Y. 509. If the second carrier "wholly failed and omitted to take any precautions or measures for the care, preservation and protection of said goods," and to give the shipper notice of the delay in transportation and of the condition thereof, the cause of action is based upon negligence. And, if the second carrier sold the goods without justifiable excuse, it was obviously conversion.

It is considered that the cause of action against the defendants or either of them, whether it arose from a breach of duty imposed by law, or whether the duty to carry arose out of a contract, is an action in tort. The complaint charges the first carrier with a wrong, and it is of no consequence whether he became a common carrier by force of an express contract, or by virtue of the legal duty imposed upon him. So the second carrier is charged with neglect and conversion while it was acting in the capacity of a common carrier. The cause of action is not based upon the contents of a contract, but it is based upon the actual wrong done by the carrier when acting as such.

It does not follow from the foregoing that upon the trial the plaintiff may not show from bills of lading or similar instruments, or stipulations, that the carrier accepted the goods for carriage on its own line or beyond its own line. Nor would the plaintiff be precluded from showing that the second carrier undertook to act as a common carrier through some traffic arrangement with the first carrier. Such contracts merely show the status of the defendants, and are evidence that it had undertaken the duty imposed upon it by law, or one which it assumed. But, when it appears that it is actually acting as a common carrier of goods, and it commits a wrong with reference to them, the gravamen of the action is the wrong.

The construction of the complaint at this time should not preclude the plaintiff on the trial, and, if he desires to amend, it should be allowed without costs.